UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TRENTON ROBINSON,<br><br>Defendant. | Case No. 18-cr-00597-RS-1<br><br>**ORDER GRANTING RENEWED MOTION FOR RELEASE** |

**I. INTRODUCTION**

Defendant Trenton Robinson makes a renewed motion for a sentence reduction and immediate release under 18 U.S.C. § 3582(c), again citing his health conditions and the risks presented by the COVID-19 pandemic. Robinson made a similar motion last month, which was denied. Since then, however, Robinson has exhausted administrative remedies as required by the statute, and the coronavirus situation at USP Lompoc, where Robinson is presently incarcerated, has worsened. He has also supplemented his latest motion with additional details on his health conditions that allegedly put him at increased risk. Although it opposed Robinson's prior motion, the government does not take a position on the merits of the present motion. For the reasons set forth below, Robinson's renewed motion for compassionate release is granted.

**II. BACKGROUND**

Robinson is currently serving a 15-month prison sentence after pleading guilty to mail fraud, 18 U.S.C. § 1341, and filing a false tax return, 26 U.S.C. § 7206(1). He admitted to his involvement in an elaborate kickback and embezzlement scheme, through which he defrauded his

former employer, Ross Stores, of over $1.1 million.  He received a reduced sentence at the government's recommendation, due to his early acceptance of responsibility and his substantial cooperation which aided the government in prosecuting his co-defendants.

Robinson began his prison term on November 18, 2019, and his anticipated last day of official incarceration, factoring in good time credit, is December 11, 2020.  Moreover, his estimated release to a halfway house is in September or October of this year.  Therefore, if not granted early release, Robinson would have an additional four to five months in prison.

On March 21, 2020, Robinson filed a motion requesting a reduction in his sentence and his immediate release due to the coronavirus pandemic and his severe psoriasis, which Robinson argued puts him at heightened risk.  The government opposed the motion for three reasons.  First, it claimed Robinson waived the right to seek compassionate release under the terms of his plea agreement.  Second, it argued Robinson had failed first to pursue administrative remedies by seeking a sentence reduction from the Bureau of Prisons ("BOP").  Third, according to the government, the risks posed by COVID-19 at Lompoc (then entirely hypothetical), did not constitute an "extraordinary and compelling reason" for a reduction in Robinson's case, psoriasis notwithstanding.  The Court denied Robinson's motion, agreeing with the government on the second and third arguments, without reaching the first.

On April 22, 2020, Robinson filed this renewed motion for compassionate release.  He highlights that, since his prior motion was filed, Lompoc Prison has gone from having no confirmed cases of COVID-19 to, according to some, being among the worst coronavirus hotspots in the nation.  *See* Richard Winton, "Coronavirus outbreak at Lompoc prison is the worst in the nation: 69 inmates, 25 staff infected," L.A. Times (Apr. 16, 2020), https://www.latimes.com/california/story/2020-04-16/coronavirus-outbreak-at-lompoc-federal-prison-is-worst-in-nation-with-69-inmates-25-staff-infected.  Furthermore, following the denial of his prior motion, Robinson submitted a written request to the BOP to allow him to serve the remainder of his sentence under home confinement.  That request was denied, and thirty days have

1  since elapsed since Robinson filed his request.  Robinson's renewed motion also provides greater
2  detail on his health conditions.
3      Asked to respond, the government took no official position on the merits of this renewed
4  motion.  It did, however, request that, should the Court grant the motion, Robinson be required to
5  quarantine for 14 days at Lompoc prior to his release.

## III. LEGAL STANDARD

Under section 3582, as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may modify a defendant's sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).  Upon such a motion, a court may modify a defendant's sentence "after considering the factors set forth in § 3553(a) to the extent applicable" if it finds "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(i).  The relevant Sentencing Commission policy statement sets forth several "extraordinary and compelling reasons."  U.S. Sentencing Guidelines, § 1B1.13(1)(A) & cmt. 1.  One of these conditions is whether the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* § 1B1.13 cmt. 1(A)(ii).  The Commission also requires the defendant not pose a danger to the safety of the community. *Id.* § 1B1.13(2).

## IV. DISCUSSION

As the government concedes, 30 days have elapsed since Robinson requested relief from the Warden at Lompoc, so Robinson has satisfied the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A).  Likewise, the government appears to have waived its prior argument that Robinson's plea agreement prohibits a motion for compassionate release.  Therefore, the renewed

1    motion hinges on whether the risks presented by COVID-19, coupled with Robinson's health
2    conditions, constitute "extraordinary and compelling reasons" for his release.
3         Lompoc Prison is currently battling one of the most serious COVID-19 outbreaks in the
4    nation.  On March 24, 2020, when Robinson's prior motion was denied, Lompoc did not have a
5    single confirmed coronavirus case.  As of one week ago, however, there were nearly 100
6    confirmed coronavirus cases, and there has already been one inmate death.  *See* Ashton McIntyre,
7    "Nearly 100 cases of coronavirus reported at Lompoc Prison, prison officials seek more help,"
8    KSBY News (Apr. 21, 2020), https://www.ksby.com/news/coronavirus/nearly-100-cases-of-
9    coronavirus-reported-at-lompoc-prison-prison-officials-seek-more-help.  The situation at Lompoc
10   has drawn national media attention, and California's two United States Senators have repeatedly
11   called on the BOP to take additional emergency measures to slow the spread of the virus at the
12   facility.  *Id.*
13        Moreover, Robinson's significant health problems over the past four months suggest he is
14   particularly vulnerable.  Although the prior order emphasized that psoriasis was not, on its own, a
15   widely-recognized risk factor, Robinson's latest motion elaborates on just how severe his psoriasis
16   is.  As reflected in Robinson's official BOP medical records (not included in his prior motion),
17   just weeks before the coronavirus pandemic hit the United States, Robinson's treating physician
18   "expressed concern about [Robinson] having a high mortality risk" due to his severe psoriatic flare
19   ups.  ECF No. 30-2, at 2.  Moreover, because of its severity, Robinson's plaque psoriasis has
20   required treatment with immunosuppressant medications—prednisone and adalimumab.  The
21   National Psoriasis Foundation Medical Board has warned that individuals like Robinson with
22   severe forms of psoriasis requiring immunosuppressive therapies may be at greater risk of
23   infection.  National Psoriasis Foundation, Coronavirus Concerns? NPF Medical Board COVID-19
24   Recommendations for Patients with Psoriatic Disease,
25   https://www.psoriasis.org/advance/coronavirus (last accessed April 26, 2020).  Robinson also
26   suffers from hypertension, which the Centers for Disease Control and Prevention ("CDC") have
27   identified as another risk factor for severe COVID-19 complications.  CDC, Groups at Higher

ORDER GRANTING RENEWED MOT. FOR RELEASE
CASE NO. 18-cr-00597-RS-1

4

Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last accessed April 26, 2020).  In short, the critical situation at Lompoc, combined with Robinson's immunosuppressant prescriptions and compromised health generally, constitute "extraordinary and compelling reasons" that justify his immediate release.

The section 3553(a) sentencing factors also support Robinson's release.  Indeed, one such factor is "the need for the sentence imposed . . . to provide the defendant with . . . medical care . . . in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).  He is unlikely to be able to get the medical care he needs at Lompoc in the midst of the pandemic.  *See* Lisa Freeland *et al.*, "We'll See Many More Covid-19 Deaths in Prisons if Barr and Congress Don't Act Now," Wash. Post (Apr. 6, 2020), https://www.washingtonpost.com/opinions/2020/04/06/covid-19s-threat-prisons-argues-releasing- at-risk-offenders/ (discussing "wholly inadequate medical care" in federal prisons).  Adequately caring for someone on immunocompromising medications like Robinsons entails reducing that individual's risk of exposure to COVID-19; keeping Robinson at Lompoc is not the "most effective manner" of mitigating that risk.

Lastly, although he pled guilty to serious crime, Robinson is a non-violent offender whose early release will not endanger the community.  *See* U.S. Sentencing Guidelines, § 1B1.13(2).  This was his first offense, and he presents a very low likelihood of recidivism.  *See* U.S. Sentencing Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*.

Congress has entrusted the courts with imposing sentences "sufficient but not greater than necessary." 18 U.S.C. § 3553(a).  Given the extraordinary circumstances of Robinson's case, there is a real possibility that, were he to stay at Lompoc to complete the final months of his sentence, his health could be severely impacted.  This outcome would so greatly exceed "just punishment for [his] offense" that the Court cannot tolerate the risk.  *See* Federal BOP, *COVID-19*, https://www.bop.gov/coronavirus/ (last accessed April 26, 2020).  Moreover, as depicted in the exhibits accompanying Robinson's renewed motion, Robinson has already suffered a great deal

during his short time at Lompoc.  He was hospitalized twice, was repeatedly unable to procure essential medications which led to severe discomfort, and spent the last six weeks worrying whether his compromised immune system could withstand the virus that has infected so many of his fellow inmates.  His immediate release in these exceptional circumstances will in no way undermine the sentencing objectives espoused in 18 U.S.C. § 3553(b).

## V. CONCLUSION

For the reasons set forth above, the motion for immediate release is granted, and the BOP is directed to release Robinson immediately.  His sentence of imprisonment is modified to time served.  However, the remaining portion of the original term of imprisonment (as calculated by the BOP), shall be served as supervised release with the special condition that Robinson shall be subject to home confinement at his parents' home in Signal Hill, California during this period.  Robinson shall then complete the three-year term of supervised release imposed in the original sentence.  Upon his release and during his term of home confinement, Robinson will satisfy the 14-day self-quarantine requirement.  The government shall serve a copy of this order on the Warden at Lompoc Prison forthwith.

**IT IS SO ORDERED**.

Dated:  April 27, 2020

RICHARD SEEBORG
United States District Judge